**In the United States District Court
for the Western District of Pennsylvania**

| | |
|---|---|
| Daniel D. Shreffler, | ) |
| | ) |
| *Appellant* | ) |
| | ) Civil Action No. 05-003E |
| Sheila Shreffler, | ) |
| | ) |
| *Appellee* | ) |

**OPINION**

Pending before the Court is the bankruptcy appeal filed by Appellant Daniel Shreffler ("Debtor") against his former wife, Sheila Shreffler ("Plaintiff"). According to the Debtor, this bankruptcy appeal presents three (3) issues: "(1) [d]id the court below err in allowing new allegations set forth in the Amended Complaint to be heard at trial; (2) [d]id the court below err in not conducting a liquidation analysis of the plaintiff's financial condition; [and] (3) [d]id the court below err in inferring an 'indemnification and hold harmless relationship in the stipulation entered into by the parties, when such language does not appear in their stipulation?"

I. Jurisdiction and Standard of Review.

Appellate jurisdiction in this matter is established pursuant to 28 U.S.C. § 158(a)(1) and Federal Rules of Bankruptcy Procedure 8001. In reviewing an appeal from a bankruptcy court, district courts apply "a 'clearly erroneous' standard to findings of fact, while applying a *de novo* standard of review to questions of law." Berkery v. C.I.R., 192 B.R. 835, 837 (E.D.Pa.1996), cert. den'd, 522 U.S. 881 (1997), citing, Universal Minerals Inc. v. C.A. Hughes & Co., 669 F.2d 98, 102 (3d Cir.1981)) (add'l citation omitted).

II. Relevant Facts.

Plaintiff's Complaint was filed on April 13, 2004. In the Complaint, Plaintiff objected, pursuant to 11 U.S.C. § 523(a)(15), to the discharge of a debt Debtor owed to Discover Card, a credit card company, based upon an Order of Court entered by the Honorable Oliver J. Lobaugh of the Venango County Court of Common Pleas in the parties' divorce proceeding, which is located at Civ. No. 596 of 2002. Complaint, ¶¶ 1 and 2.

The bar date for filing complaints to determine dischargeability of debts in Debtor's case was May 10, 2004. At a status conference held on June 7, 2004, upon verbal request by Plaintiff's attorney, the bankruptcy court permitted Plaintiff to amend her Complaint, and ordered that an Amended Complaint be filed by June 25, 2004.

An Amended Complaint was filed on June 25, 2004. In the Amended Complaint, Plaintiff reiterated her objection to the discharge of the debt Debtor owed to Discover Card based upon the state court order, and further objected pursuant to 11 U.S.C. § 523(a)(15), to the discharge of a $14,000 claim that Debtor owed to Plaintiff pursuant to the same state court order; $9000.00 of the $14,000 claim was for Plaintiff's share of marital real property and $5000.00 of the $14,000 claim was for Plaintiff's share of marital personal property.

The parties then stipulated at an October 20, 2004 hearing before the bankruptcy court that the $9000.00 Debtor owed Plaintiff for her share of the marital real property was nondischargeable. Thus, only the issue of the nondischargeability of the Discover Card debt and the $5000.00 debt for marital personal property remained to be litigated.

Ultimately, the bankruptcy court ruled in Plaintiff's favor and held that both debts were nondischargeable.

III. Legal Analysis.

    A. Whether the bankruptcy court erred when it allowed new allegations set forth in Plaintiff's Amended Complaint to be heard at trial.

    The first issue before this Court is whether the bankruptcy court erred in allowing new allegations set forth in the Amended Complaint, specifically those related to the dischargeability of the Debtor's $5000 debt owed to Plaintiff for her share of marital personal property, to be heard at trial.

    Debtor's position on this issue is that the bar date for objections to dischargeability was May 10, 2004, and Plaintiff did not file her Amended Complaint until June 25, 2004. Brief of Appellant, p. 2.

    Plaintiff's position on this issue is that all of her objections to dischargeability contained in the Amended Complaint arise out of the state court order in their divorce proceeding and therefore, the claim asserted in the amended pleading "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading:"

> [i]n the case at hand, Plaintiff, in her original pleading refers to the Order of Court dated November 26, 2003 entered by the Honorable Oliver J. Lobaugh at Civ. No. 596 of 2002, the Plaintiff and Defendant's divorce action. The amended pleading refers specifically in Count II to the same order of November 26, 2003 wherein Defendant also agreed to pay Plaintiff $14,000 as consideration for the marital real and personal property. Justice and judicial economy would appear to mandate the amendment as Defendant entered into this agreement via the Order of Court of November 26, 2003, which states that the parties were entering into a, ". . . comprehensive agreement in this matter and have stipulated that the Court could order and it is Ordered. . . ."

Brief of Appellee, p. 6, quoting, Shreffler v. Shreffler, Civ. No. 596 of 2002, (Order of Court of Common Pleas of Venango County, November 26, 2003), p. 1.

    Fed.R.Bank.P. 4007 provides in pertinent part, that: "[a] complaint to determine the dischargeability of any debt pursuant to § 523(c) of the Code shall be filed not later than 60 days

3

following the first date set for the meeting of creditors held pursuant to § 341(a).... On motion of any party in interest after hearing on notice, the court may for cause extend the time fixed under this subdivision. The motion shall be made before the time has expired." Fed.R.Bank.P. 4007(c). Fed.R.Bank.P. 715 explains that in adversary proceedings, such as the instant case, Federal Rule of Civil Procedure 15 is applicable. Fed.R.Bank.P. 715. Fed.R.Civ.P. 15 states in relevant part:

> **(a) Amendments.** A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders.
>
> **(c) Relation Back of Amendments.** An amendment of a pleading relates back to the date of the original pleading when
>
>> **(1)** relation back is permitted by the law that provides the statute of limitations applicable to the action, or
>> **(2)** the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.

Fed.R.Civ.P. 15 (a) and (c). In <u>USX v. Barnhart</u>, 395 F.3d 161, 166-67 (3d Cir. 2004), <u>cert. den'd</u>, 2005 WL 2493894 (2005), the United States Court of Appeals for the Third Circuit stated:

> Federal Rule of Civil Procedure 15(a) provides, in pertinent part, that after a responsive pleading, a party may amend its pleading "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." In the absence of substantial or undue prejudice to the nonmoving party-which "is the touchstone for the denial of an amendment"-"denial instead must be based on bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by

> amendments previously allowed, or futility of amendment." *Lorenz v. CSX Corp.,* 1 F.3d 1406, 1413-14 (3d Cir.1993) (quotation marks omitted) (citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

> . . .

> Federal Rule of Civil Procedure 15(c)(2) provides, in relevant part, "An amendment of a pleading relates back to the date of the original pleading when ... the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading...."

> [A]mendments that restate the original claim with greater particularity or amplify the factual circumstances surrounding the pertinent conduct, transaction or occurrence in the preceding pleading fall within Rule 15(c). In essence, application of Rule 15(c) involves a search for a common core of operative facts in the two pleadings. As such, the court looks to whether the opposing party has had fair notice of the general fact situation and legal theory upon which the amending party proceeds.

Id. at 166-167.

The interplay of all of the above-stated rules was succinctly explained by the bankruptcy court in In re McKoy, 211 B.R. 843, 846-47 (E.D. Va. 1997):

> Rule 4007(c) establishes a strict time limit for filing a complaint to determine dischargeability under § 523(c). Specifically, the rules provides that such a complaint *must be* "filed not later than 60 days following the first date set for the meeting of creditors held pursuant to § 341(a)." Although an extension of time may be granted, the motion for the extension must be made before the 60 day time period expires. This time limit, while not a jurisdictional prerequisite, is analogous to a statute of limitations. *See* Farouki v. Emirates Bank Int'l, Ltd. 14 F.3d 244, 248 (4th Cir.1994). And significantly, Rule 9006, which governs the enlargement of time limitations contained in the Bankruptcy Rules, provides no assistance to a party who misses the deadline of Rule 4007(c); Rule 9006(b)(3) explicitly provides that a bankruptcy court may enlarge the time for filing a complaint pursuant to Rule 4007(c) "only to the extent and under the conditions stated in those rules." Further, Rule 9006(b)(3) precludes the consideration of untimely motions under the excusable neglect standard of Rule 9006(b)(1). *See* Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership, 507 U.S. 380, 389 n. 4, 113 S.Ct. 1489, 1495 n. 4, 123 L.Ed.2d 74 (1993); In re Mulvaney, 179 B.R. 806, 808-09 (Bankr.E.D.Va.1995). Put another way, the Rule 4007(c) time limit for objecting to discharge is not easily avoided.

> This does not mean, however, the Rule 4007(c) time limit for filing § 523 objections to discharge always stands as a bar to the relation back feature of Rule 7015; it does not. In appropriate circumstances, an amendment to a timely filed discharge objection, allowed pursuant to Rule 7015 after the expiration of the Rule 4007(c) time limit, will relate back. . . . [C]onsider the . . . situation in which a plaintiff inadvertently omits to allege an additional basis for objection to discharge in the original complaint and the time limit provided by Rule 4007(c) has expired. In this event, provided that the objection asserted in the amended complaint arises out of the same conduct, transaction, or occurrence pertaining to the debtor's bankruptcy, Rule 7015 provides that the amendment will relate back to the initial filing. Both the misnomer example and the claim addition or revision example illustrate permissible uses of Rule 7015's relation back feature in the context of the Rule 4007(c) time bar.

Id. at 846-47 (footnotes omitted).

Applying the above-stated law to the facts of this case, the original Complaint alleged that Plaintiff and Debtor "were married and are subject to an Order of Court dated November 26, 2003, entered by the Honorable Oliver J. Lobaugh of the Venango County Court of Common Pleas which is located at Civ. No. 596 of 2002." Complaint, ¶ 1. The Complaint further alleges that:

> Petitioner, Shiela R. Shreffler, objects to the discharge of Respondent/Debtor, Daniel D. Shreffler, for the reason that their joint Discover card account number 6011002525519724 in the approximate amount of $6,000.00 is not dischargeable pursuant to 11 USC § 523(a)(15) because the parties are subject to aforesaid Order of Court dated November 26, 2003 from the Venango County Court of Common Pleas located at Civ. No. 596 of 2002 wherein it specifically stated that, "With respect to liabilities, there is a joint Discover card, which the parties represent as being the only marital debt that currently exists. At a hearing on a petition for special relief on November 21, 2002, the court ordered, essentially, that the parties would share equally in the payment of that debt and that arrangement, which currently is that each party remits an equal amount to Discover card in a minimum amount due, will continue until such debt is completely paid by the parties.

Complaint, ¶ 2. In her Amended Complaint, Plaintiff maintained her objection to the discharge of the Debtor's Discover card debt and added, in relevant part, an objection to discharge of the $5000 debt Debtor owed Plaintiff pursuant to the parties' Property Settlement Agreement for her

share of the parties' personal property. See Amended Complaint, ¶¶ 3-5.

Turning first to Fed.R.Civ.P. 15(c), the issue is whether "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Here, both the Discover Card debt and the $5000 debt owed to Plaintiff by Debtor arose from the Property Settlement Agreement entered into by both parties and the subject of the same Order of Court. As such, the Court finds that the new claim asserted in Plaintiff's Amended Complaint "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."

Turning next to Fed.R.Civ.P. 15(a), the issue is whether this case is one where "justice so requires" the court to allow Plaintiff to amend her Complaint. Fed.R.Civ.P. 15(a). We find that this is such a case; allowing Plaintiff to amend her Complaint after the limitations period ended to add another claim that arose under the parties' Property Settlement Agreement did not cause substantial or undue prejudice to the Debtor, "'the touchstone for the denial of an amendment'" and there is no evidence that there was "'bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment'." USX Corp., 395 F.3d at 846, quoting Lorenz, 1 F.3d at 14.

For the above-stated reasons, the bankruptcy court did not err when it allowed the Appellee to amend her Complaint to add her objection to the discharge of the $5000 debt Debtor owed Plaintiff pursuant to the parties' Property Settlement Agreement for her share of the parties' personal property.

B. Whether the bankruptcy court erred when it failed to include in its 11 U.S.C. § 523 (a)(15)(B) analysis the ability of Plaintiff to file bankruptcy.

The bankruptcy court held that in making its 11 U.S.C. § 523(a)(15)(B) analysis of the parties' financial positions, the court did not have to consider, as advocated by Debtor, what effect Plaintiff filing bankruptcy would have on said analysis. See Memorandum Opinion, p. 10 ("[t]his Court does not believe that the availability of personal bankruptcy constitutes a defense to a Section 523(a)(15) action, nor has the Court found any cases to support such a notion"). Debtor argues that the bankruptcy court should have considered what benefits the Plaintiff would realize from a bankruptcy discharge when conducting its § 523(a)(15)(B) analysis of her financial position. Brief of Appellant, p. 3, citing In re Smither, 194 B.R. 102 (E.D. Ky. 1996). In arguing before the bankruptcy court, the Debtor had stated the following:

> But I want to point out and emphasize the fact that she is going to have better than $5,000 in attorney's fees, plus a Discover Card debt, and then some other sundry debts, which could all be discharged in bankruptcy.
>
> And I noticed in Attorney Hasek's brief, even with the one case she mentioned, I think it's Smither, the Court even in that case considered the possibility of the creditor filing their own petition and receiving a discharge. And I think in this case she could file a Chapter 7, and it would be a no-asset case. And she would keep all of her assets and discharge all of her debts.

Transcript from November 16, 2004 Hearing, pp. 5-6.

In In re Smither, the bankruptcy court stated in relevant part: "[i]n order to make this determination [the 523(a)(15)(B) balancing test], *at a minimum,* a Court should consider the following factors: ... 10.) Whether the objecting creditor is eligible for relief under the Bankruptcy Code . . . ." Id. at 109. The In re Smither court then concluded "[t]his list of factors is by no means exclusive and the 523(a)(15)(B) balancing test has to be performed on a case by case basis." Numerous bankruptcy courts and the Bankruptcy Appeals Panel for the United

States Court of Appeals for the Sixth Circuit have utilized the Smither list of factors when conducting their § 523(a)(15)(B) balancing test. See, for example, In re Molino, 225 B.R. 904, 909 (6th Cir. BAP (Ohio) 1998); In re Forcier, 2003 WL 22846359, *5 (Bankr.D.Vt. Nov. 26, 2003); Fronheiser v. Papi, 2000 WL 33712308, *8 (Bankr.D.Del. July 28, 2000).

We agree with the court's statement in In re Wehr, 292 B.R. 390 (D.N.D. 2003) that: "[t]his [§523(a)(15)(B)] equitable balancing test must be applied on a case-by-case basis and involves an examination of the totality of the circumstances involved in each case. There is not a fixed laundry list of factors to be considered." Id. at 402. While the bankruptcy court did not explicitly take into account whether Plaintiff is eligible for relief under the Bankruptcy Code, we find that the bankruptcy court sufficiently analyzed Plaintiff's financial condition when conducting its §523(a)(15)(B) analysis. See Memorandum Opinion, pp. 8-9. Accordingly, the bankruptcy court did not err by not including in its 11 U.S.C. § 523 (a)(15)(B) analysis the ability of Plaintiff to file bankruptcy.

C. Whether the bankruptcy court erred when it held that the absence of a "hold harmless" or indemnification clause in the parties' Property Settlement Agreement did not mandate that Debtor's debts incurred through the Property Settlement Agreement were dischargeable.

The bankruptcy court found "that under the relevant statutory provisions and case law, lack of a specific hold harmless provision in the PSA is not controlling as to the applicability of Section 523(a)(15) in determining the issue of non-dischargeability. Furthermore, under Pennsylvania law, the property settlement agreement can itself provide the basis for meeting the threshold requirements of a Section 523(a)(15) action so long as the obligations relate to non Section 523(a)(5) debts." Memorandum Opinion, pp. 11-12.

Debtor argues that the lack of an indemnification or hold harmless clause in the parties' marital agreement allows a discharge of his obligation to pay the Discover obligation. Brief of Appellant, pp. 3-4. "In the absence of indemnification, the obligation owed by defendant to plaintiff cannot be inferred. The only obligation herein are the obligations from both parties to Discover." Id. at p. 4. In support of this position, Debtor cites to the legislative history of 11 U.S.C. §523(a)(15). The relevant portion of the legislative history to § 523 (a)(15) states:

> Subsection (e) adds a new exception to discharge for some debts arising out of a divorce decree or separation agreement that are not in the nature of alimony, maintenance or support. In some instances, divorcing spouses have agreed to make payments of marital debts, holding the other spouse harmless from those debts, in exchange for a reduction in alimony payments. In other cases, spouses have agreed to lower alimony based on a larger property settlement. If such "hold harmless" and property settlement obligations are not found to be in the nature of alimony, maintenance, or support, they are dischargeable under current law. The nondebtor spouse may be saddled with substantial debt and little or no alimony or support. This subsection will make such obligations nondischargeable in cases where the debtor has the ability to pay them and the detriment to the nondebtor spouse from their nonpayment outweighs the benefit to the debtor of discharging such debts. In other words, the debt will remain dischargeable if paying the debt would reduce the debtor's income below that necessary for the support of the debtor and the debtor's dependents. The Committee believes that payment of support needs must take precedence over property settlement debts. The debt will also be discharged if the benefit to the debtor of discharging it outweighs the harm to the obligee. For example, if a nondebtor spouse would suffer little detriment from the debtor's nonpayment of an obligation required to be paid under a hold harmless agreement (perhaps because it could not be collected from the nondebtor spouse or because the nondebtor spouse could easily pay it) the obligation would be discharged. The benefits of the debtor's discharge should be sacrificed only if there would be substantial detriment to the nondebtor spouse that outweighs the debtor's need for a fresh start.

H.R.Rep. No. 103-835, at 54 (1994). Debtor contends: "[i]n drafting and enacting 11 USC 523(a)(15) congress was preoccupied with the hardship of 'hold harmless' agreements that were not in the nature of alimony maintenance or support." Brief of Appellant, p. 10, citing, 140 Congressional Rec. H 10,770.

10

Debtor also disputes the bankruptcy court's determination that "the dissolution decree itself is an enforceable judgment creating new legal consequences that extinguish previous obligations." Id. Debtor argues that 23 Pa.C.S.A. § 3502(e) does not create a new obligation to a spouse, that no new obligation was created regarding the Discover account, and no previous obligations were extinguished. Id. "The Discover debt was a joint debt before the agreement was made in the divorce case." Id.

In response, *in toto*, Plaintiff states: "Finally, in a case on point, in Mannix v. Mannix, 303 B.R. 587 (Bankr. M.D. Pa. 2003), the court held that the lack of specific hold harmless language will not cause a Section n523(a)(15) claim to fail." Brief of Appellee, p. 8.

Contrary to Debtor's position, a number of courts have held, as did the bankruptcy court in the case *sub judice*, "that because the spouse has an independent state law right to enforce the terms of the dissolution decree, the order itself gives rise to a new and distinct obligation." In re Balm, 2004 WL 637033, *2 (Bankr. N.D. Iowa July 2, 2004) (citations to supporting cases omitted). The reasoning behind this conclusion is "that the dissolution decree creates a new enforceable obligation between the former spouses, irrespective of their shared liability to the third-party creditor." Id. We agree that this is the correct analysis.

Applying this law to the facts of our case, as explained in Mannix v. Mannix, 303 B.R. 587 (Bankr.M.D.Pa. 2003): "[u]nder Pennsylvania law, section 3502(e)(9) of the Divorce Code allows a former spouse to enforce an obligation imposed in an equitable distribution order through state court imposed remedies. As a result, the obligation is enforceable--capable of being enforced--against a former spouse by virtue of the court ordered equitable distribution. The effect of an enforceable court ordered distribution is to create a liability against a debtor in favor of a former spouse." Id. at 593. Moreover, as further explained by the Mannix court:

11

> [w]ith respect to the debt at issue, this statutory right places an implied obligation on Debtor to hold Plaintiff harmless from future liability to [Discover Card]. Although the divorce proceedings did not alter either parties' personal liability to [Discover Card], it did create a new liability running from Debtor to Plaintiff which was not in existence prior to the commencement of either the separation or divorce proceedings. This liability to hold Plaintiff harmless is enforceable under Pennsylvania law despite the fact that specific indemnification language is absent from the order. 23 Pa.C.S.A. § 3502(e); *accord Richardson v. Richardson*, 774 A.2d 1267 (Pa.Super.2001).

Id. at 596.

Therefore, we find that the bankruptcy court did not err when it held that the absence of a "hold harmless" or indemnification clause in the parties' Property Settlement Agreement did not mandate that Debtor's debts incurred through the Property Settlement Agreement were dischargeable.

IV. Conclusion.

Debtor's bankruptcy appeal is granted to the extent he argues that the bankruptcy court erred when, in conducting its 11 U.S.C. § 523(a)(15)(B), it failed to consider whether the Plaintiff is eligible for relief under the Bankruptcy Code. The bankruptcy appeal is otherwise denied.

The following Order is hereby entered:

**<u>ORDER</u>**

AND NOW, this 24th day of October, 2005, it is hereby ORDERED, ADJUDGED AND DECREED that the bankruptcy appeal filed by Appellant Daniel Shreffler against Sheila Shreffler is DENIED. The November 16, 2004 Judgment Order of the Bankruptcy Court is AFFIRMED.

*/s/ Maurice B. Cohill, Jr.*
Maurice B. Cohill, Jr.
Senior Judge